IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRIAN KEITH BARNETT,

    Plaintiff,

  v.

MICHAEL EVANS, et al.,

    Defendants.
_____/

No. C 06-0193 CW (PR)

ORDER GRANTING <u>IN FORMA PAUPERIS</u>, REVIEWING FIRST AMENDED COMPLAINT, ORDERING SERVICE OF COGNIZABLE CLAIMS AND DISMISSING NON-COGNIZABLE CLAIMS

    Plaintiff Brian Keith Barnett, a state prisoner incarcerated at Salinas Valley State Prison (SVSP) at the time of the events at issue,[1] filed this <u>pro se</u> civil rights complaint alleging SVSP officials improperly confiscated his personal property and denied him access to the courts by not allowing him to use his legal papers. On March 30, 2007, the Court issued an Order Denying Without Prejudice Leave to Proceed <u>In Forma Pauperis</u> [and] Dismissing Complaint With Leave to Amend (March 30, 2007 Order) (Docket #13). On May 25, 2007, Plaintiff filed a First Amended Complaint (FAC) (Docket # 19), and on September 6, 2007, Plaintiff filed a document titled, "Notice to the Court of Facts and Issues for the Record and Exhibits A-D Attached Hereto," which the Court

---

[1] On December 19, 2007, Plaintiff notified the Court that he is now housed at California State Prison at Corcoran.

construes as a supplement to the FAC (Supplement) (Docket # 20). The Court now reviews the FAC and Supplement to determine whether they state cognizable claims for relief.

In the March 30, 2007 Order, the Court indicated that, in his original complaint, Plaintiff had attempted to state two claims against Defendants: (1) denial of procedural due process rights for deprivation of property and (2) denial of access to the courts. The Court dismissed with leave to amend the deprivation of property claim because "Plaintiff does not allege whether Defendants were acting in conformity with an established state procedure." The Court concluded that Plaintiff had stated a claim for denial of access to the courts based on his allegations that certain Defendants ignored his requests for access to two boxes containing legal documents which resulted in his inability to present a habeas petition to the state court. However, the Court noted that Plaintiff had not named the individuals responsible for denying him access to his legal documents and thus it could not serve the responsible defendants. This claim also was dismissed with leave to amend.

In the March 30, 2007 Order, the Court noted that Plaintiff had failed to set forth specific facts describing the actions of each named Defendant and how these actions violated Plaintiff's constitutional rights. The Court instructed Plaintiff, in his amended complaint, to allege facts supporting his claim against each individual Defendant by listing the constitutional right that Defendant violated, describing what each Defendant did or failed to do, and how each Defendant's acts or omissions caused him injury.

The Court also noted that Plaintiff had not shown that he had exhausted administrative remedies on his claims, which must be done prior to filing them in federal court. The Court granted Plaintiff leave to amend to provide copies of denials of his appeals at the Director's level of review which would indicate administrative exhaustion or to provide evidence showing that he should be excused from the exhaustion requirement because prison officials refused to process his appeals.

On May 25, 2007, Plaintiff filed his FAC, but advised the Court that he had not had the opportunity to obtain all the documentation regarding exhaustion of his claims. In a declaration attached to his FAC, Plaintiff states that he submitted to the third level of review administrative appeal number 04-3996 regarding deprivation of property and appeals 02-04397 and 04-01451 regarding the denial of access to legal materials. Therefore, he alleges, these claims are exhausted. He also states that, although he filed many requests for copies of these appeals, prison officials have not provided them to him even though he needs the appeals in order to "set forth the dates, times and names of the defendants in addition to the acts and omissions" which resulted in a violation of his constitutional rights.

In his FAC, Plaintiff alleges the following. Prior to being transferred to SVSP in October, 2002, Plaintiff began preparing his pro se petition for writ of habeas corpus using legal materials contained in six boxes. After he arrived at SVSP, he was told that he could only have "six cubic feet" of his property, and that he had to submit an "inmate request for interview" form to access the

3

rest of his property.  This meant that Plaintiff had access to four of the six boxes of legal material.  Plaintiff wrote a request for access to all his legal materials explaining why it was necessary for him to have immediate access to them while he was writing his habeas petition.  Plaintiff also completed and filed the "request for interview" form, as instructed by prison staff.  Plaintiff alleges that on December 10, 2002, he was interviewed by G.K. Crawford, Supervisor of Vocational Instruction, who said that he spoke with Sgt. Mantel who confirmed that Plaintiff had two additional boxes of legal material in storage.  Supervisor Crawford, although sympathetic to Plaintiff's problem, did not obtain the legal materials for Plaintiff.

Plaintiff alleges that, after he was unsuccessful at obtaining access to his legal materials through Supervisor Crawford, he filed administrative appeals.  Plaintiff pursued the matter to the third level review which was denied by N. Grannis, Chief of the Inmate Appeal Branch (IAB).  Plaintiff is suing Grannis for her failure to instruct the SVSP Warden to provide Plaintiff access to his legal materials.

In addition to his appeals, Plaintiff alleges that he wrote letters to then-Warden of SVSP A.A. LaMarque and California Department of Corrections (CDC)[2] Director E.S. Alameida and his successor Jeanne Woodford.  These letters resulted in an inquiry by Captain A. Hedgpeth, who interviewed Plaintiff.  Captain Hedgpeth informed Plaintiff that all of Plaintiff's property had been issued

---

[2]The CDC is now the California Department of Corrections and Rehabilitation (CDCR).

4

to him. When Plaintiff insisted there were two more boxes, Captain Hedgpeth said he would make further inquiry into the matter. Plaintiff is suing Captain Hedgpeth because he had the power and authority to remedy the alleged constitutional violation, but elected not to act and thus allowed the constitutional violation to continue. Plaintiff sues LaMarque, Alameida and Woodford on the same ground.

Plaintiff began working on this civil complaint using legal practice guides he had in his cell which taught the proper way to write a § 1983 complaint. While he was writing his complaint, prison officials ordered a mass search of the facility in which Plaintiff was housed and Correctional Officer (CO) Hausmann confiscated Plaintiff's law books on the premise that Plaintiff possessed too many books. This obstructed Plaintiff from filing his civil rights complaint in federal court. Plaintiff filed administrative appeal number 04-01451 in which he requested that his legal books be returned to him.[3]

Approximately eighty days after he filed his appeal, Plaintiff was told by CO S. Younce that the only legal materials he could have were those pertaining to an active case that had already been docketed in the courts. This meant that Plaintiff could not work on his criminal appeal, habeas petition or the instant civil rights complaint.

Also, CO Younce took Plaintiff's postage stamps and some items of food which were never returned to Plaintiff. In response,

---

[3] Plaintiff does not name CO Hausmann as a Defendant.

5

Plaintiff filed appeal number 04-03996 in which he stated that, because he was now living in the general prison population, a new director's rule required that all his property be returned to him and that the reason his property was not returned to him was the failure of the institutional officials properly to update institutional operational procedures and to train subordinates. Appeal number 04-03996 was denied at all three levels of review.

On pages two and three of the FAC, Plaintiff names the individuals he is suing: Michael Evans, who replaced A.A. LaMarque as Warden of SVSP; E.S. Alameida Jr. and Jeanne Woodford, former Directors of the CDCR; K.J. Allen, Appeals Examiner; T. Surges (signed for N. Grannis); CO S. Younce; G.K. Crawford, Supervisor of Vocational Instruction; J. Allison, Correctional Administrator; and Sergeant Mantel. In the caption of the FAC, Plaintiff additionally names as Defendants L.E. Scribner, Deputy Warden (Acting); Captain A. Hedgpeth, Correctional Administrator; and N. Grannis, Chief IAB. The Court liberally construes Plaintiff's FAC to name as Defendants the individuals he lists in the caption as well as the individuals he lists on pages two and three.

Plaintiff states that, due their rank and position, these individuals "had the ability or authority or was [sic] in position to exercise their official power to remedy the problem of the stored property . . . Such Defendants as having [sic] a role either directly or via the administrative appeal process or as a result of a communication sent to them informing the individual of the problems . . . each accordingly knew or reasonably should have known the violations being perpetrated against the Plaintiff's

constitutional rights to access the courts."

DISCUSSION

Instead of following the instruction in the March 10, 2007 Order to list against each Defendant separately the constitutional right violated, describe what each Defendant did or failed to do, and how each Defendant's acts or omissions caused him injury, the FAC consists of one long chronological narrative with Defendants' actions described within the context of the narrative. Therefore, it is difficult to ascertan who Plaintiff is suing on each cause of action. However, in the interest of resolving the issues presented in a timely manner, the Court will construe this <u>pro se</u> FAC liberally and attempt to determine which individuals are being sued on each cause of action. Also, based on Plaintiff's declaration regarding his administrative appeals, the Court concludes that, for the purposes of this preliminary review of Plaintiff's complaint, he has satisfactorily shown that he has exhausted his claims.

I. Deprivation of Personal Property

In the March 10, 2007 Order, the Court noted that Plaintiff had not indicated whether he was being deprived of his property negligently or pursuant to a state regulation. Based on the FAC, it appears that Plaintiff is alleging that CO Younce intentionally took Plaintiff's property from him pursuant to a regulation and that Plaintiff's appeals of this alleged taking were denied on the basis of a misunderstanding of state or prison regulations. Plaintiff appears to be suing the following Defendants on this claim: Captain Hedgpeth, Deputy Warden L.E. Scribner, Appeals

Examiner K.J. Allen, N. Grannis, T. Stugis, and CO S. Younce.

Ordinarily, due process of law requires notice and an opportunity for some kind of hearing prior to the deprivation of a significant property interest. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978). Neither the negligent nor intentional deprivation of property states a due process claim under § 1983 if the deprivation was random and unauthorized, however. Parratt v. Taylor, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property).

If the deprivation is not random and unauthorized, but the result of "established state procedure," the availability of a post-termination tort action does not necessarily provide due process. Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-37 (1982) (failure on part of state commission to hold hearing within statutory time limits not permitted to terminate timely filed claim). In those instances, the Fourteenth Amendment requires "'an opportunity . . . granted at a meaningful time and in a meaningful manner,'. . . for a hearing appropriate to the nature of the case.'" Id. at 437.

Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981). A person

8

deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. <u>Leer</u>, 844 F.2d at 633; see, e.g., <u>Robins v. Meecham</u>, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent Eighth Amendment violation may be basis for liability). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. <u>Leer</u>, 844 F.2d at 633.

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). An administrator may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help. <u>Jett v. Penner</u>, 439 F.3d 1091, 1098 (9th Cir. 2006). "'Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for

9

his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" Preschooler II v. Davis, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted). Evidence of a prisoner's letter to an administrator alerting him to a constitutional violation is sufficient to generate a genuine issue of material fact as to whether the administrator was aware of the violation, even if he denies knowledge and there is no evidence the letter was received. Jett, 439 F.3d at 1098. Evidence that a prison supervisor was personally involved in an unconstitutional transfer and denied all appeals of the transfer, for example, may suffice. Hamilton v. Endell, 981 F.2d 1062, 1067 (9th Cir. 1992); see also Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998) (supervisor who signed internal affairs report dismissing complaint against officer despite evidence of officer's use of excessive force may be liable for damages).

Read liberally, the allegations in Plaintiff's FAC may state a claim against CO Younce for intentionally depriving Plaintiff of his property pursuant to a state regulation without a pre-deprivation hearing. Plaintiff also states claims against those Defendants who reviewed Plaintiff's appeals and did not remedy the constitutional violation. These Defendants are Captain Hedgpeth, Deputy Warden Scribner, Appeals Examiner Allen, and N. Grannis. Plaintiff does not state a claim against Sturgis because the only allegation is that he signed the appeal denial on behalf of Grannis. Therefore, this claim may proceed against the above-named Defendants and it is dismissed against Sturgis.

II. Denial of Access to Court

In the March 30, 2007 Order, the Court ruled that Plaintiff had successfully alleged a due process violation based on denial of access to the court, but had failed to allege sufficient facts indicating how each Defendant had caused this violation.

Plaintiff appears to be suing the following Defendants on this claim: Warden Michael Evans, former Warden A.A. LaMarque, former CDCR Directors Jeanne Woodford and E.S. Alameida, CO Younce, G.K. Crawford, Captain Hedgpeth, and N. Grannis.

Plaintiff successfully alleges a claim against Captain Hedpeth, N. Grannis and CO Younce.

Plaintiff alleges that Captain Hedgpeth was designated to investigate Plaintiff's claim of denial of access to his legal materials, that Captain Hedgpeth met with Plaintiff and told him that according to property inventory form, CDC 104, all of Plaintiff's property had been issued to him. Plaintiff alleges that when he told Captain Hedgpeth that he never received the last two boxes, Captain Hedgpeth said he would investigate further, but no further action was taken. Plaintiff claims that because Captain Hedgpeth knew about the constitutional violation and did nothing to remedy it, he directly participated in it. Because Plaintiff alleges that Captain Hedgpeth knew of the alleged constitutional violation, had the power to remedy it, but chose not to act, he has sufficiently alleged a claim against Captain Hedgpeth.

Regarding N. Grannis, Plaintiff alleges that she denied Plaintiff's third level appeal and that because she knew of the alleged constitutional violation and did nothing to remedy it, she

11

is liable.  This is sufficient to state a claim against Grannis.

Plaintiff alleges that CO Younce told Plaintiff he could only have legal materials that related to a pending case and only gave Plaintiff papers related to a pending case.  This prevented Plaintiff from working on his criminal appeal, habeas petition and this case.  FAC at 3-H.  These allegations are sufficient to state a claim against CO Younce.

Plaintiff does not state a claim against the following named Defendants:  Warden Evans, former Warden LaMarque, former CDCR Directors Woodford and Alameida, G.K. Crawford, and Sgt. Mantel.

Plaintiff alleges that when he first arrived at SVSP, he was interviewed by G.K. Crawford, Supervisor of Vocational Instruction, who was sympathetic to Plaintiff's situation but who did not obtain for Plaintiff access to his two boxes of legal materials.  These allegations fail to state that Crawford deprived Plaintiff of his constitutional right to access the courts.

Regarding Sgt. Mantel, Plaintiff merely alleges that he told Crawford that Plaintiff had two boxes of legal materials stored in R&R.  This allegation fails to state a claim against Sgt. Mantel.

Regarding J. Allison, Correctional Administration, Plaintiff merely alleges that Crawford failed to inform him of Plaintiff's situation.  This allegation fails to state a claim against J. Allison.

Plaintiff alleges that he sent former CDCR Directors Alameida and Woodford letters regarding his situation and they requested that the Warden investigate.  Because Alameida and Woodford took appropriate action when informed of the alleged constitutional

12

violation, Plaintiff's allegations do not state a claim against them. The same is true regarding Warden Evans and Acting Deputy Warden L.E. Scribner, who Plaintiff alleges ordered an investigation when they were made aware of the alleged constitutional violation.

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's request to proceed in forma pauperis is GRANTED. (Docket # 2).

2. Plaintiff states a cognizable claim for deprivation of personal property against CO Younce, Captain Hedgpeth, Deputy Warden Scribner, Appeals Examiner Allen and N. Grannis. Plaintiff states a cognizable claim for lack of access to the courts against Captain Hedgpeth, N. Grannis and CO Younce. The claims against all other Defendants are dismissed. The dismissals are with prejudice because, even construed liberally, Plaintiff's amended complaint fails to state a claim against them after having been given an opportunity to amend to do so.

3. The Clerk of the Court shall mail to CO Younce, Captain Hedgpeth, Deputy Warden Scribner, Appeals Examiner Allen, and N. Grannis a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint (Docket #1) and the amended complaint (Docket #19), the supplement and all attachments thereto, and a copy of this Order. The Clerk shall also mail copies of these documents to the Attorney General of the State of California. In addition, the Clerk shall serve a copy of this Order on Plaintiff.

13

4. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if any Defendant, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fails to do so, said Defendant will be required to bear the cost of such service unless good cause be shown for his failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendant had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before sixty (60) days from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons.

5. In order to expedite the resolution of this case, the Court orders as follows:

    a. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. In addition, no later than ninety (90) days from the date of this Order, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior

14

to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than sixty (60) days after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice regarding summary judgment motions should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is

15

cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce <u>evidence</u> in support of those allegations when he files his opposition to Defendants' dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

      c. If Defendants wish to file a reply brief, they shall do so no later than thirty (30) days after the date Plaintiff's opposition is filed.

      d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

   8. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

   9. All communications by Plaintiff with the Court must be served on Defendants, or their counsel once counsel has been designated, by mailing a true copy of the document to Defendants or their counsel.

   10. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

16

11. Extensions of time are not favored, though reasonable extensions will be granted. However, the party making a motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued. Any motion for an extension of time must be filed no later than fifteen days prior to the deadline sought to be extended.

IT IS SO ORDERED.

Dated: 1/9/08

CLAUDIA WILKEN
United States District Judge

|   |   |
|---|---|
| UNITED STATES DISTRICT COURT<br>FOR THE<br>NORTHERN DISTRICT OF CALIFORNIA | |

BRIAN K. BARNETT,

    Plaintiff,

v.

MICHAEL EVANS et al,

    Defendant.

Case Number: CV06-00193 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 9, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Brian Keith Barnett T-38323
Facility 4A2R-005L
California State Prison-Corcoran SHU
4001 King Ave.
P.O. Box 3476
Corcoran, CA 93212-3476

Dated: January 9, 2008

                                  Richard W. Wieking, Clerk
                                  By: Sheilah Cahill, Deputy Clerk

18