IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRIAN KEITH BARNETT,                    No. C 06-0193 CW (PR)

                   Plaintiff,           ORDER GRANTING DEFENDANTS'
                                        MOTION TO DISMISS
        v.

MICHAEL EVANS, et al.,                  (Docket nos. 51, 65, 74)

                   Defendants.
_____/

    Plaintiff Brian Keith Barnett, a state prisoner who was
incarcerated at Salinas Valley State Prison (SVSP) at the time of
the events at issue,[1] filed a pro se civil rights complaint under
42 U.S.C. § 1983.  Thereafter, he filed an amended complaint,
alleging that prison officials at SVSP improperly confiscated his
personal property and denied him access to the courts.

    In an Order dated January 9, 2008, the Court found that
Plaintiff stated: (1) a cognizable claim for deprivation of
personal property against Defendants SVSP Correctional Captain A.
Hedgpeth, Correctional Officer S. Younce, Deputy Warden L. E.
Scribner, and Appeals Examiners K. J. Allen and N. Grannis; (2) a
cognizable claim of denial of access to the courts against
Defendants Grannis and Hedgpeth stemming from an incident on
October 29, 2002; and (3) a cognizable claim of denial of access to
the courts against Defendant Younce stemming from an incident on
September 4, 2004.  (Jan. 9, 2008 Order at 13.)  The Court
dismissed with prejudice Plaintiff's claims against all other

_____

    [1] Plaintiff is currently incarcerated at California State
Prison - Corcoran.

Defendants.

Defendants now move to dismiss Plaintiff's amended complaint on the grounds that: (1) Plaintiff's claim of denial of access to the courts in 2002 is barred by the statute of limitations; (2) his factual allegations fail to state a claim of deprivation of property under Federal Rule of Civil Procedure 12(b)(6); (3) his factual allegations fail to state a claim of denial of access to the courts because he has failed to allege actual injury resulting from the alleged violations in 2002 and 2004; (4) his allegations against Defendants Hedgpeth, Allen, Scribner and Grannis do not raise actionable claims under § 1983 because there is no constitutional right to a prison grievance process; and (5) Defendants are entitled to qualified immunity from suit. Plaintiff has filed an opposition to the motion, and Defendants have filed their reply.

For the reasons discussed below, the Court GRANTS Defendants' motion to dismiss.

BACKGROUND

The following factual allegations are taken from Plaintiff's amended complaint, his opposition to Defendants' motion to dismiss and exhibits attached to his opposition.

On October 29, 2002, Plaintiff was transferred from Ironwood State Prison to SVSP. Prior to being transferred, Plaintiff began preparing his pro se petition for a writ of habeas corpus using legal materials contained in six boxes.

2

After Plaintiff arrived at SVSP, he was told that he could only have "six cubic feet" of his property pursuant to Title 15 of the California Code of Regulations § 3190(b), which states in part, "The combined volume of state-issued and allowable personal property items shall not exceed six cubic feet . . . ."  Cal. Code. Regs. tit. 15, § 3190(b).  This meant that Plaintiff had access to four of the six boxes of legal material, and two of his boxes were placed at the prison's receiving and release (R&R) area.

Plaintiff wrote a request for access to all his legal materials explaining that it was necessary for him to have immediate access to them while he was writing his habeas petition. Prison officials instructed Plaintiff to submit "request for interview" forms in order to gain access to the two boxes, which were being held at R&R.  Plaintiff claims he submitted "request for interview forms via institutional mail addressed to the R&R supervisor requesting access to his legal materials stored in R&R."  (Am. Compl. at 3-C.)  He claims his written requests were ignored.

On October 30, 2002, Plaintiff filed SVSP administrative appeal number B-02-4397 after he failed to obtain access to his legal materials.  (Pl.'s Ex. A.)  Plaintiff alleges that on December 10, 2002, he was interviewed by G. K. Crawford, SVSP Supervisor of Vocational Instruction, who said that he spoke with SVSP R&R Correctional Sergeant Mantel who confirmed that Plaintiff

had two additional boxes of legal material in storage.  Plaintiff claims that Supervisor Crawford was sympathetic to his problem, but did not obtain the legal materials for him.

On December 11, 2002, Plaintiff's appeal was partially granted, according to the first level response (FLR) written by Supervisor Crawford and SVSP Correctional Administrator J. Allison, which stated:

> Upon reviewing the facts provided, appellant can receive access to his legal material by setting up a date and time, through custody staff, to review his legal material at R&R. Additionally, by reducing the amount of property he currently has in his cell, he may be able to receive the property that is being stored in R&R.

(Pl.'s Ex. A, FLR dated Dec. 11, 2002 at 1.)  Plaintiff claims that he forwarded his appeal to the second formal level of review because no steps were taken to retrieve the missing property.

On January 21, 2003, his appeal was granted in part, according to the second level response (SLR) written by SVSP Chief Deputy Warden Edward J. Caden, who stated in part:

> The response at the 1st Level of review indicated two methods for accessing the legal materials requested.  No indication of the appellant attempting to utilize either method was provided.  The six cubic foot maximum allowable property is designed to limit the amount of material in the cells to facilitate searches and the amount of fuel available in case of fire.
>
> The appellant is advised to access his legal material stored in R&R by one of the means outlined in the first level response.

(Pl.'s Ex. A, SLR dated Jan. 21, 2003 at 2.)  Plaintiff claims that still nothing was done to retrieve his property; therefore he submitted his appeal for review at the Director's level.

United States District Court
For the Northern District of California

On April 29, 2003, Defendant Grannis, as Chief of the Inmate Appeals Branch, denied Plaintiff's appeal at the Director's level without interviewing Plaintiff.  Plaintiff claims Defendant Grannis is "liable for his failure to pick up his phone or send written instruction[s] to the warden at Salinas Valley State Prison directing that the Plaintiff by taken to R&R to access his legal materials and records when he knew or reasonably should have known of the violation of the Plaintiff's constitutional rights of meaningful access to the courts . . . ."  (Id. at 3-C-3-D.) According to the Director's Level Appeal Decision, Defendant Grannis declined to modify the decision at the FLR and SLR, which had provided Plaintiff a remedy.  She stated:

> Staff affirmed that the appellant possess two boxes of legal material in R&R; however, contact with Correctional Sergeant Mantel, R&R Sergeant, SVSP, during the Director's Level of Review (DLR), revealed that the appellant has yet to submit a request to obtain any legal material out of either box. In that the appellant failed to comply with the options provided him during the FLR, it is viewed that he has not been adversely impacted, nor have staff denied him access to his legal material.  Further review at the DLR is not warranted.

(Pl.'s Ex. A, Director's Level Appeal Decision dated Apr. 29, 2003 at 1.)

Plaintiff alleges that on May 7, 2003 he wrote letters concerning his missing legal materials to SVSP Warden A. A. Lamarque and California Department of Corrections and Rehabilitation (CDCR) Director E. S. Alameida as well as his successor Jeanne Woodford.  Thereafter, Plaintiff received a copy of a memorandum from the CDCR dated September 29, 2003 and

United States District Court
For the Northern District of California

addressed to Warden Lamarque.  In the memorandum, CDCR Regional Administrator G. Galaza directed Warden Lamarque to "review this issue, prepare a response and forward a copy to the Central Region Office by October 23, 2003." (Pl.'s Ex. B, Sept. 29, 2003 Memorandum by G. Galaza at 1.)  In response to this memorandum, Defendant Hedgpeth interviewed Plaintiff on October 8, 2003. Officer Archibald, the package/property officer, was also present during the interview.  When Plaintiff insisted there were two more boxes of legal property that was missing, Defendant Hedgpeth instructed Officer Archibald to inquire further into the matter. On October 9, 2003, Defendant Hedgpeth sent a letter to Plaintiff explaining that all of Plaintiff's property had been issued to him:

> On October 9, 2003, Officer Archibald reviewed and made
> a copy of your property card that is kept in R&R (see
> attached).  On your property card, it is documented
> that you received six (6) boxes of property October 30,
> 2002.  It is listed that there is no property in R&R
> that belongs to you.  Based on this information, your
> legal material appears to have been issued to you.

(Pl.'s Ex. B., Oct. 9, 2003 Memorandum by Def. Hedgpeth at 1.)[2] Defendant Hedgpeth further noted that Plaintiff had "filed a CDC 602 and a Board of Control claim form concerning [his] missing property."  (Id.)  Defendant Hedgpeth determined that even though Plaintiff stated that he was still missing his legal materials, he "properly addressed this issue by utilizing the appeal process."

---

    [2] The Court notes that a copy of Plaintiff's property card is
not attached to Defendant Hedgpeth's Oct. 9, 2003 memorandum, which
is attached as Exhibit B to Plaintiff's opposition to the motion to
dismiss.

United States District Court
For the Northern District of California

(<u>Id.</u>)   Therefore, Defendant Hedgpeth informed Plaintiff that he could do nothing further, stating "There is no further remedy that I can address for you at this time."  (<u>Id.</u>)

On June 16, 2004, Plaintiff asked to be placed in administrative segregation to avoid a "hostile and potentially violent confrontation."  (<u>Id.</u> at 3-G.)  Plaintiff alleges he was fraudulently charged with battery on a peace officer.  On June 20, 2004, he was placed in administrative segregation, where he was denied access to all his personal belongings.  After being housed in administrative segregation for approximately eighty days, Plaintiff was placed in a holding cell at SVSP Facility D.

On September 4, 2004, while Plaintiff was housed at SVSP Facility D, he requested that his legal documents be returned to him.  Defendant Younce informed Plaintiff that the only legal materials he could have access to were those pertaining to his active case in the Monterey County Superior Court, <u>Barnett v. Payton</u>, case number M68859.  Plaintiff claims that Defendant Younce refused to allow Plaintiff access to his "folders containing his preparatory federal civil rights papers because [Defendant Younce] claimed the Plaintiff could only obtain documentation and records relative to a[n] active case docketed in the courts."  (<u>Id.</u> at 3-H.)  Defendant Younce also denied Plaintiff's request "to extract a specific envelope out of [Plaintiff's] property that contained approximately $47.00 in U.S. postage."  (<u>Id.</u>)  Finally, Defendant Younce asked Plaintiff "what he was going to do with his food items," and when Plaintiff did

not respond, Defendant Younce seized the food items.  (<u>Id.</u>)
Plaintiff claims he "said nothing" in response because "he had not
been found guilty of any security housing unit type of offense so
no disposition [of the food items] was required."  (<u>Id.</u>)  After
Plaintiff was "released from D1 administrative segregation to
Facility D general population," he was given access to his
personal property.  (<u>Id.</u>)  However, he claims that some personal
items were missing, including his food items and postage stamps.
(<u>Id.</u> at 3-I.)  Plaintiff alleges that the missing property was
seized by Defendant Younce pursuant to SVSP Operational Procedure
no. 10.  (<u>Id.</u>)

    In response to Defendant Younce's actions, Plaintiff filed
SVSP administrative appeal number D-04-03996.  (Pl.'s Ex. J.)
Plaintiff stated that, because he was living in the general prison
population, SVSP Operational Procedure no. 10 required that all
his property be returned to him.  He alleged that his property was
not returned to him because of the failure of the prison officials
properly to update institutional operational procedures and to
train subordinates.  Appeal number D-04-03996 was denied by
Defendant Hedgpeth at the first formal level of review, by
Defendant Scribner at the second formal level of review, and by
Defendants Allen and Grannis at the Director's level of review.

    Plaintiff alleges that, on November 16, 2007, the two missing
boxes were returned to him when he was transferred to the
California State Prison - Corcoran.  (Opp'n at 1.)

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)).

In considering whether the complaint is sufficient to state a claim, the district court must accept all factual allegations as true and construe them in the light most favorable to the plaintiff.  Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, the court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 988, amended, 275 F.3d 1187 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The court need not accept as true allegations that contradict facts which may be judicially noticed by the court.  See Mullis v. United States Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), cert. denied, 486 U.S. 1040 (1988).

United States District Court
For the Northern District of California

    Although the court is generally confined to consideration of

the allegations in the pleadings, when the complaint is

accompanied by attached documents, such documents are deemed part

of the complaint and may be considered in evaluating the merits of

a Rule 12(b)(6) motion.[3]   Durning v. First Boston Corp., 815 F.2d

1265, 1267 (9th Cir. 1987).   The court can also consider documents

the complaint necessarily relies on and whose authenticity is not

contested.   See Lee v. County of Los Angeles, 250 F.3d 668, 688

(9th Cir. 2001).   In addition, the court may take judicial notice

of facts that are not subject to reasonable dispute.   See id. at

688 (discussing Fed. R. Evid. 201(b)).   Allegations of fact in the

complaint must be taken as true and construed in the light most

favorable to the non-moving party.   See Parks Sch. of Bus. v.

Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

    A plaintiff may plead himself out of a claim by including

unnecessary details contrary to his claims.   Sprewell v. Golden

State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).   A court, for

example, is not required to accept as true conclusory allegations

which are contradicted by documents referred to in the complaint.

Bell Atl. Corp., 127 S. Ct. at 1965; Steckman v. Hart Brewing,

Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998).   After all,

---

    [3] However, the attachment of a document as an exhibit to the
complaint does not mean that the plaintiff has adopted as true all
the statements in the document.   See Gant v. Wallingford Bd. of
Educ., 69 F.3d 669, 674 (2d Cir. 1995).   The attached document will
be read to evidence what it incontestably shows once one assumes
that it is what the complaint says it is or that it is what it
appears to be.   See id.

"conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." <u>McGlinchy v. Shell Chemical Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988).  A court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994).

Although a Rule 12(b)(6) motion usually is not available to raise an affirmative defense, it may be used when the complaint contains allegations showing a complete defense or bar to recovery, such as a statute of limitations problem.  <u>See</u> <u>Jablon v. Dean Witter & Co.</u>, 614 F.2d 677, 682 (9th Cir. 1980).  Dismissal on statute of limitations grounds can be granted pursuant to Rule 12(b)(6) "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." <u>Id.</u>

DISCUSSION

I.  Defendant Younce

On September 16, 2008, counsel for Defendants filed a "Statement Noting Defendant Younce's Death and Request to Dismiss Him From This Action," stating that Defendant Younce died on September 1, 2008.  Counsel made no mention of Defendant Younce's successor or representative.  Plaintiff was made aware of Defendant Younce's death because a copy of the statement above was sent to Plaintiff at his current address.  More than six months

have passed and neither party has filed a motion for substitution

naming Defendant Younce's successor or representative pursuant to

Federal Rule of Civil Procedure 25(a)(1), which states:

> If a party dies and the claim is not extinguished, the
> court may order substitution of the proper party.  A
> motion for substitution may be made by any party or by
> the decedent's successor or representative.  If the
> motion is not made within 90 days after service of a
> statement noting the death, the action by or against the
> decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).

Because no motion for substitution has been made within ninety

days after service of a statement noting the death, Plaintiff's

claims against Defendant Younce -- including claims of deprivation

of personal property and denial of access to the courts stemming

from the September 4, 2004 incident -- are DISMISSED.

Plaintiff's claim of deprivation of personal property is also

made against some of the remaining Defendants, as discussed below.

II.  Claim Relating to Deprivation of Personal Property

Defendants Hedgpeth, Grannis, Allen and Scribner denied

Plaintiff's administrative appeals stemming from the September 4,

2004 incident at various levels of review.  The Court initially

found Plaintiff's claim of deprivation of personal property

against these Defendants cognizable because they allegedly

reviewed his appeals and did not remedy the constitutional

violations.  (Jan. 9, 2008 Order at 10.)

Defendants move for the dismissal of Plaintiff's allegations

involving the deprivation of his property against Defendants

Hedgpeth, Grannis, Allen and Scribner because they cannot serve as

12

United States District Court
For the Northern District of California

1  the basis for liability for a due process violation under a § 1983

2  action.

3      When a prisoner suffers a property loss that is random and

4  unauthorized his remedy lies with the State, as neither the

5  negligent nor intentional deprivation of property states a due

6  process claim under § 1983 under such circumstances.  See Parratt

7  v. Taylor, 451 U.S. 527, 535-44 (1981) (state employee negligently

8  lost prisoner's hobby kit), overruled in part on other grounds,

9  Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Hudson v.

10 Palmer, 468 U.S. 517, 533 (1984) (intentional destruction of

11 inmate's property).  The availability of an adequate state

12 post-deprivation remedy, for example a state tort action,

13 precludes relief because it provides adequate procedural due

14 process.  King v. Massarweh, 782 F.2d 825, 826 (9th Cir. 1986).

15 California law provides an adequate post-deprivation remedy for

16 any property deprivation.  Barnett v. Centoni, 31 F.3d 813, 816-17

17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).  However,

18 allegations that a plaintiff has been deprived of his property

19 negligently or intentionally without a pre-deprivation hearing do

20 not state a due process claim under § 1983 if the deprivation was

21 random and unauthorized because, as mentioned above, California

22 provides an adequate state post-deprivation remedy.  See Zinermon

23 v. Burch, 494 U.S. 113, 128-29 (1990) (where state cannot foresee

24 and therefore provide meaningful hearing prior to deprivation,

25 statutory provision for post-deprivation hearing or common law

28

13

1   tort remedy for erroneous deprivation satisfies due process).

2       Defendants argue that to the extent that Plaintiff maintains

3   that prison officials acted randomly and without authorization by

4   confiscating and failing to return his property, he fails to state

5   a claim upon which relief may be granted under § 1983.  See

6   Barnett, 31 F.3d at 816.

7

8       Here, Plaintiff's allegations in the amended complaint that

9   his personal property -- food items and postage stamps -- was lost

10  or destroyed are not cognizable in a § 1983 action.  He alleges

11  random and unauthorized deprivations of personal property without

12  a pre-deprivation hearing, but that kind of conduct does not

13  amount to a violation of any federal constitutional right.  See

14  Zinermon, 494 U.S. at 128-29.

15      Accordingly, the Court GRANTS Defendants' motion to dismiss

16  Plaintiff's deprivation of property claim against Defendants

17  Hedgpeth, Grannis, Allen and Scribner for failure to state a claim

18  upon which relief may be granted.

19

20  III. Denial of Access to the Courts

21      In its Order of January 9, 2008, the Court found a cognizable

22  claim of denial of access to the courts against Defendant Grannis

23  and Hedgpeth, stemming from the fact that Plaintiff was prevented

24  from filing a habeas petition when officers denied him access to

25

26

27

28

14

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

his property on October 29, 2002.[4]

Defendants argue that Plaintiff's claim of denial of access to the courts in 2002 against Defendant Grannis should be dismissed because Plaintiff has "no constitutional right to a prison grievance process." (Mot. to Dismiss at 13 (citing <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003)).) However, the Court has already found that Defendant Grannis could be liable for reviewing Plaintiff's appeal regarding his 2002 denial of access to the courts claim and failing to remedy the ongoing constitutional violation. (Jan. 9, 2008 Order at 10-12.) Accordingly, the Court DENIES Defendants' motion to dismiss on this ground.

Defendants also contend that Plaintiff's claim of denial of access to the courts in 2002 is barred by the applicable statute of limitations.

Section 1983 does not contain its own limitations period. The appropriate period is that of the forum state's statute of limitations for personal injury torts. <u>Wilson v. Garcia</u>, 471 U.S. 261, 276 (1985), <u>superseded by statute on other grounds, as stated in</u> <u>Jones v. R.R. Donnelley & Sons Co.</u>, 541 U.S. 369, 377-78 (2004); <u>Elliott v. City of Union City</u>, 25 F.3d 800, 802 (9th Cir.

---

[4] The Court also found Plaintiff stated cognizable claims of denial of access to the courts against Defendants Younce stemming from the September 4, 2004 incident. As mentioned above, all claims against Defendants Younce have been dismissed; therefore, the Court need not address Defendants' motion to dismiss as to Plaintiff's claim of denial of access to the courts against Defendant Younce.

United States District Court
For the Northern District of California

1994).

The Court looks to federal law to determine when a cause of action accrues and the statute of limitations begins to run in a § 1983 action.  Wallace v. Kato, 549 U.S. 384, 388 (2007); Elliott, 25 F.3d at 801-02.  The statute of limitations generally begins to run only once a plaintiff has knowledge of the "critical facts" of his injury, which are "that he has been hurt and who has inflicted the injury."  United States v. Kubrick, 444 U.S. 111, 122 (1979).  But the plaintiff must be diligent in discovering the critical facts.  See Bibeau v. Pac. Nw. Research Found., 188 F.3d 1105, 1108 (9th Cir. 1999), amended, 208 F.3d 831 (9th Cir. 2000). A plaintiff who does not actually know that his rights were violated will be barred from bringing his claim after the running of the statute of limitations if he should have known in the exercise of due diligence.  Id.

Defendants argue that this § 1983 cause of action accrued no later than October 29, 2002, the date Plaintiff was initially denied his property.  (Mot. to Dismiss at 8.)

On October 29, 2002, California's statute of limitations for personal injury actions was one year.  See former Cal. Civ. Proc. Code § 340(3) (one year general residual statute of limitations for personal injury actions); see also Elliott, 25 F.3d at 802.[5]

---

[5] The limitations period later changed to two years, see Cal. Civ. Proc. Code § 335.1, but that new statute went into effect January 1, 2003 and it does not apply retroactively to claims that accrued prior to that date.  See Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004).

United States District Court
For the Northern District of California

Federal courts must also give effect to a state's tolling provisions.  See Hardin v. Straub, 490 U.S. 536, 543-44 (1989); Marks v. Parra, 785 F.2d 1419, 1419-20 (9th Cir. 1986).  In California, this includes tolling the statute of limitations during imprisonment.  California Code of Civil Procedure § 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life."  See Cal. Civ. Proc. Code § 352.1(a).  However, the tolling is not indefinite; the disability of imprisonment delays the accrual of the cause of action for a maximum of two years.  See id.

Here, even if Plaintiff's cause of action accrued on October 29, 2002, he remained incarcerated for at least two years thereafter.  Thus under California law Plaintiff would have had, at most, three years from the date on which his claim accrued in which to file his claim.  Consequently, he would have been required to do so by no later than October 29, 2005.  Plaintiff, however, did not file the present action until January 11, 2006. As Plaintiff filed his complaint seventy-four days after the statute of limitations had expired, Defendants argue that his claim of denial of access to the courts in 2002 is time-barred.

Defendants Grannis and Hedgpeth did not become involved until they made decisions on Plaintiff's deprivation of property claim on April 29, 2003 and October 9, 2003, respectively.  While Defendants argue the claim arose when Plaintiff's two boxes were

first taken from him and placed in R&R on October 29, 2002, the violation continued because Plaintiff alleges he was still being denied access to his property at the time of Defendants Grannis's and Hedgpeth's actions.

The Court need not decide whether Plaintiff's claim accrued on October 29, 2002 or whether it did not accrue against Defendants Grannis and Hedgpeth until they became involved, because in either event he is entitled to equitable tolling of the statute of limitations.

Where the danger of prejudice to the defendant is absent, and the interests of justice so require, equitable tolling of the limitations period may be appropriate. <u>Azer v. Connell</u>, 306 F.3d 930, 936 (9th Cir. 2002). Because the Court has borrowed California's statute of limitations, it also applies California's equitable tolling rules. <u>Id.</u>

Under California law, equitable tolling "'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" <u>Cervantes v. City of San Diego</u>, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting <u>Addison v. California</u>, 21 Cal. 3d 313, 317 (1978)). Thus, in an appropriate case, the statute of limitations might be tolled for time spent pursuing a remedy in another forum before filing the claim in federal court.

Under California law, equitable tolling is appropriate in a later suit when an earlier suit was filed and the record shows:

United States District Court
For the Northern District of California

"'(1) timely notice to the defendant in the first claim;
(2) lack of prejudice to the defendant in gathering evidence to
defend against the second claim; and (3) good faith and reasonable
conduct by the plaintiff in filing the second claim.'"  Daviton v.
Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1137-38 (9th Cir.
2001) (en banc) (citing Collier v. City of Pasadena, 142 Cal. App.
3d 917, 924 (1983)).  The first factor, timely notice, requires
that the plaintiff have filed the first claim within the statutory
period.  Id. at 1138.  To satisfy the second factor "the facts of
the two claims [should] be identical or at least so similar that
the defendant's investigation of the first claim will put him in a
position to fairly defend the second."  Id.  California law does
not require that the two claims seek the same remedies, involve
the same procedures, or arise from the same laws.  Id. at 1141.
Good faith and reasonable conduct, the third factor, is not as
well defined in the case law.  Id. at 1138.  However, if a
plaintiff simply allowed the statute on his second claim nearly to
run or "deliberately misled the defendant into believing the
second claim would not be filed," then a court might find bad
faith.  Id. (internal quotation marks and citations omitted).
Upon satisfying the three-pronged test, a plaintiff should be
relieved from the limitations bar.  Id. at 1140; see, e.g., Azer,
306 F.3d at 936-37 (granting equitable tolling where plaintiff
satisfied three-prong test and finding that by filing an official-
capacity action in state court plaintiff provided individual
defendants within state office adequate notice that they might be

19

**United States District Court**
For the Northern District of California

1   subject to a civil rights suit).

2   From the face of Plaintiff's amended complaint as well as his

3   opposition and the documents attached thereto, it appears that he

4   meets all three prongs of the relevant test for equitable tolling:

5   (1) his state action was filed within the statutory period;

6   (2) the facts of the state and federal claims are so similar that

7   Defendants will not be prejudiced in their ability to gather

8   evidence to defend against Plaintiff's federal claims; and

9

10  (3) Plaintiff has exercised good faith and reasonable conduct in

11  filing his federal claims.  Plaintiff filed his administrative

12  appeal relating to this claim on October 30, 2002, the day after

13  his claim accrued.[6]  His administrative remedies were exhausted on

14  April 29, 2003, when his appeal was denied at the Director's

15  level.  (Pl.'s Ex. A.)  Because Plaintiff was pursuing a remedy in

16  another forum through the use of the inmate grievance process, the

17  Court finds that he is entitled to equitable tolling during this

18  time.  Thus, the three-year statute of limitations is equitably

19  tolled for 181 days during the time Plaintiff exhausted his

20

21

22      [6] Exhausting all administrative appeals is a prerequisite to a
    prisoner filing a suit which challenges the conditions of his
23  confinement in either state or federal court.  <u>See</u> <u>In re Muszalski</u>,
    52 Cal. App. 3d 500, 508 (1975) (prisoner challenging conditions of
24  confinement by way of state habeas corpus petition first must
    exhaust the administrative remedy provided by the California
25  Department of Corrections); 42 U.S.C. § 1997e ("No action shall be
    brought with respect to prison conditions under [42 U.S.C. § 1983],
26  or any other Federal law, by a prisoner confined in any jail,
    prison, or other correctional facility until such administrative
27  remedies as are available are exhausted.").  <u>See</u> <u>also</u> <u>Azer</u>, 306
    F.3d at 936 (taking into account plaintiff's pursuit of state
28  administrative and judicial remedies when finding equitable
    tolling).

United States District Court
For the Northern District of California

administrative remedies from October 30, 2002 until April 29,
2003.  Therefore, approximately two years and eight-and-a-half
months passed from April 29, 2003 until Plaintiff filed the
present action on January 11, 2006.  Thus, Plaintiff's action was
filed within the three year limitations period, and his claim of
denial of access to the courts in 2002 is timely.  Accordingly,
the Court DENIES Defendants' motion to dismiss on the ground that
this claim is time-barred.

In the alternative, Defendants Grannis and Hedgpeth argue
(1) that Plaintiff's allegations fail to state a claim against
them for their actions stemming from the October 29, 2002 incident
and (2) that they are entitled to qualified immunity.

To state a claim for denial of access to the courts, a
prisoner must prove that there was an inadequacy in the prison's
legal access program that caused him an actual injury.  See Lewis
v. Casey, 518 U.S. 343, 350-55 (1996).  To prove an actual injury,
the prisoner must show that the inadequacy in the prison's program
hindered his efforts to pursue a non-frivolous claim concerning
his conviction or conditions of confinement.  See id. at 354-55.

A cognizable claim is stated if prison officials "actively
interfer[e]" with a prisoner's access to the courts.  See id. at
350.  However, negligence does not amount to "active interference"
and thus does not rise to the level of a constitutional violation,
even if it affected a prisoner's ability to present his claims in
court.  See id.; Daniels v. Williams, 474 U.S. 327, 333-34 (1986)
(suggesting that negligent acts generally do not violate

United States District Court
For the Northern District of California

constitutional rights).

In his amended complaint, Plaintiff alleges that Defendant Grannis handled the Director's level review of his claim that he was denied access to his two boxes of legal material.  Plaintiff claims that because Defendant Grannis knew of the alleged constitutional violation and did nothing to remedy it, she is liable.  The Court cannot accept as true Plaintiff's allegations that Defendant Grannis did nothing because such conclusory allegations are contradicted by documents referred to in the amended complaint.  See Bell Atl. Corp., 127 S. Ct. at 1965; Durning, 815 F.2d at 1267; Lee, 250 F.3d at 688.  Plaintiff has attached the Director's Level Appeal Decision, which shows that Defendant Grannis conducted a thorough review of the FLR and SLR decisions and concluded that because "appellant has failed to comply with the options provided him during the FLR, it is viewed that he has not been adversely impacted, nor have staff denied him access to his legal material."  (Pl.'s Ex. A, Director's Level Appeal Decision dated Apr. 29, 2003 at 1.)  While Plaintiff claims that his "requests were never responded to," (Am. Compl. at 3-E), his attachments once again contradict his conclusory allegations. Plaintiff has attached his "Basis of Opposition and Dissatisfaction to First Level Reviewers Responce [sic]," which states, "The first level reviewers['] response in theory should work but in practice it is another way and means to delay or continue to obstruct me from accessing my materials."  (Pl.'s Ex. A, Pl.'s Opp'n to FLR Decision dated Dec. 28, 2002 at 1.)

United States District Court
For the Northern District of California

Plaintiff fails to allege that he took advantage of the options presented to him at the FLR, which would have allowed him to access his legal materials.   Instead, Plaintiff claims that he was unsuccessful when he pursued these options in the past: "appellant has also been trying to see R&R staff in order to send some tennis shoes back to the manufacturer and nothing has taken place." (Id.)  In his opposition to the SLR's decision, Plaintiff again complains about the options presented by the FLR:  "The process as set forth by the reviewers simply does not work . . . ."  (Pl.'s Ex. A, Pl.'s Opp'n to SLR Decision dated Feb. 20, 2003 at 1.) Plaintiff claims that the only way this alleged violation could be remedied would be for the reviewers, including Defendant Grannis, "to pick[] up the institutional telephone and personally call[] R&R staff and direct[] them to bring the appellant immediately to R&R so that he could access his legal materials . . . ."  (Id.) Defendant Grannis reviewed all the documents Plaintiff submitted in support of his appeal to the Director's level of review as well as the decisions at the FLR and SLR.  In addition, she contacted Sergeant Mantel, who "revealed that the appellant has yet to submit a request to obtain any legal material out of either box." (Pl.'s Ex. A, Director's Level Appeal Decision dated Apr. 29, 2003 at 1.)  Based on the documents she reviewed and the information she received, Defendant Grannis declined to modify the decision at the FLR and SLR, which had provided Plaintiff a remedy.  The record does not show that Plaintiff told Defendant Grannis that he had submitted a request to obtain legal material from his two

**United States District Court**
For the Northern District of California

boxes, or that his request was denied.  Even if Plaintiff had

submitted such a request, Defendant Grannis cannot be liable for

relying on the information from the FLR decision, the SLR decision

and Sergeant Mantel.  While Plaintiff alleges that Defendant

Grannis's actions affected his ability to present his claims in

court, even negligence does not amount to "active interference"

with his access to the court and thus does not rise to the level

of a constitutional violation.  See Lewis, 518 U.S. at 350;

Daniels, 474 U.S. at 333-34.  Accordingly, the Court finds that

Plaintiff fails to state a claim of denial of access to the courts

against Defendant Grannis.

Regarding Defendant Hedgpeth, Plaintiff alleges that he was

designated to investigate Plaintiff's claim of denial of access to

his legal materials.  Defendant Hedgpeth met with Plaintiff on

October 8, 2003 and told him that, according to his property card,

all of his property had been issued to him.  Plaintiff alleges

that he then told Defendant Hedgpeth that he never received the

last two boxes of legal materials.  Defendant Hedgpeth said he

would investigate further and that "Plaintiff would later receive

a memorandum regarding the matter."  (Am. Compl. at 3-E.)

Plaintiff claims that no further action was taken by Defendant

Hedgpeth; therefore, Defendant Hedgpeth "was negligent in his duty

and in effect directly participated in the constitutional

violations . . . ."  (Id.)  Thus, Plaintiff acknowledges that, at

most, Defendant Hedgpeth's action constituted negligence.

Furthermore, again, the Court cannot accept as true Plaintiff's

United States District Court
For the Northern District of California

allegation that Defendant Hedgpeth did nothing further after the interview because this conclusory allegation is contradicted by documents referred to in the amended complaint.  Attached as a document in support of his amended complaint is Defendant Hedgpeth's October 9, 2003 memorandum.  (Pl.'s Ex. B., Oct. 9, 2003 Memorandum by Def. Hedgpeth at 1.)  Thus, contrary to Plaintiff's allegations above, Defendant Hedgpeth did get back to Plaintiff the very next day by sending him a memorandum, which stated that Defendant Hedgpeth conducted an investigation as to whether Plaintiff's boxes were being held at R&R.  (Id.) Defendant Hedgpeth relied on information from Officer Archibald, who indicated that he searched R&R and found that there was no property in R&R that belonged to Plaintiff.  (Id.)  Based on this information, Defendant Hedgpeth stated, "There is no further remedy that I can address for you at this time."  (Id.)  The information Defendant Hedgpeth relied on was apparently incorrect because Plaintiff claims to have received the two missing boxes after he was transferred to another prison.  (Opp'n at 1.) However, like Defendant Grannis's actions, Defendant Hedgpeth's actions, even if negligent, do not amount to a constitutional violation.  See Lewis, 518 U.S. at 350; Daniels, 474 U.S. at 333-34.  Accordingly, the Court finds that Plaintiff fails to state a claim of denial of access to the courts against Defendant Hedgpeth.

Even if Plaintiff had alleged a cognizable constitutional claim of denial of access to the courts, Defendants argue, he

United States District Court
For the Northern District of California

fails to allege actual injury resulted, "such as the inability to meet a filing deadline or present a claim." (Reply at 4 (citing Lewis, 518 U.S. at 354-55).) Plaintiff claims that he was unable to file a habeas petition because he could not access all of his legal materials. (Am. Compl. 3-A-3-B.) However, again, Plaintiff's attachments in support of his amended complaint contradict his conclusory allegations. Plaintiff has submitted an "Order Denying Petition for Writ of Habeas Corpus" issued by the state superior court and dated June 4, 2007. (Pl.'s Not. to Court of Facts and Issues for the Record, Ex. D, June 4, 2007 Order Denying Petition for Writ of Habeas Corpus at 1-3.) Thus, Plaintiff was able to file his habeas petition prior to November 16, 2007, the date his two missing boxes were returned to him. The superior court order addressed Plaintiff's claims on the merits and did not dismiss them as being untimely. (Id.) Therefore, the Court finds that Plaintiff's claim of denial of access to the courts against Defendants Grannis and Hedgpeth fails for the additional reason that his conclusory allegation that the violation resulted in actual injury is contradicted by the fact that he was able to file a habeas petition even though he did not have access to all of his legal materials.

Accordingly, Defendants' motion to dismiss is GRANTED, and the complaint is DISMISSED. Because the Court has granted Defendants' motion to dismiss as to all of Plaintiff's claims, it need not address Defendants' argument that they are entitled to qualified immunity. Plaintiff had already amended once before

**United States District Court**
For the Northern District of California

service and his amended complaint fails to allege a constitutional violation; therefore, the dismissal is without further leave to amend. See <u>Janicki Logging Co. v. Mateer</u>, 42 F.3d 561, 566 (9th Cir. 1994) (futility grounds to deny leave to amend).

CONCLUSION

For the foregoing reasons,

1.   Plaintiff's claims against Defendant Younce are DISMISSED pursuant to Federal Rule of Civil Procedure 25(a)(1).

2.   Defendants' motion to dismiss (docket no. 51) is GRANTED, and the complaint is DISMISSED without further leave to amend.

3.   The Clerk shall enter judgment, terminate all pending motions, including Plaintiff's motions to compel and for appointment of counsel (docket nos. 65 and 74), and close the file.  Each party shall bear his or her own costs.

4.   Plaintiff has filed a notice relating to obstruction of the filing of an action in the United States District Court for the Eastern District of California.  If Plaintiff seeks to bring an action in federal court about the conditions of confinement at the California State Prison - Corcoran, he must file a civil rights complaint under 42 U.S.C. § 1983 in the Eastern District of California.

5.   This Order terminates Docket nos. 51, 65 and 74.

IT IS SO ORDERED.

DATED:    3/24/09

_____
CLAUDIA WILKEN

1                                              United States District Judge

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

BRIAN K. BARNETT,

        Plaintiff,

  v.

MICHAEL EVANS et al,

        Defendant.

_____/

Case Number: CV06-00193 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 24, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Brian Keith Barnett T-38323
Facility 4A2R-005L
California State Prison-Corcoran SHU
4001 King Ave.
P.O. Box 3476
Corcoran,  CA 93212-3476

Dated: March 24, 2009

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

United States District Court
For the Northern District of California